IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELORES NORRIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, Acting | : | |
| Commissioner of Social Security | : | NO. 13-2060 |

## MEMORANDUM

**Padova, J.**                                                   **September 25, 2014**

Plaintiff Delores Norris filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying her claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383. Pursuant to Local Rule 72.1(d)(1)(C), we referred the case to Magistrate Judge Thomas J. Rueter for a Report and Recommendation ("R&R"). The Magistrate Judge has recommended that Plaintiff's Request for Review be denied, and Plaintiff has now filed objections to the R&R. For the reasons that follow, we overrule Plaintiff's objections and adopt the Magistrate Judge's R&R.

## I.      BACKGROUND

Plaintiff filed an application for SSI on July 15, 2009, alleging that she had become disabled beginning on September 4, 2010.[1] (R. 25, 148.) In her brief in support of her Request for Review, she claims to be disabled by HIV, Hepatitis C, knee arthritis, depression, anxiety, high blood pressure, and obesity. Plaintiff was born on September 4, 1955, and when the Administrative Law Judge ("ALJ") issued his decision, she was fifty-five years old. (R. 22,

---

[1] Plaintiff originally listed January 1, 2006 as her onset date. At the administrative hearing, she amended her onset date to September 4, 2010. (R. 25, 42.)

160.)  Plaintiff has not worked since 2005, when she was employed as a home health aide.  (R. 49, 161.)

The Commissioner denied Plaintiff's application on December 1, 2009.  (R. 79-83.) Plaintiff filed a Request for Hearing by Administrative Law Judge on January 22, 2010.  (R. 84-86.)  A hearing was held on March 21, 2011, at which Plaintiff; Ms. Lee Levin, a vocational expert ("VE"); and Dr. Sklaroff, a medical expert ("ME"), testified. (R. 38-65.)  On May 25, 2011, the ALJ issued an Unfavorable Decision.  (R. 22-34.)  The ALJ concluded that Plaintiff has not been disabled since June 19, 2009.  (R. 25.)  He further concluded that Plaintiff has not engaged in substantial gainful activity since June 19, 2009, and that Plaintiff had the following severe impairments: HIV, symptoms of left knee arthritis, obesity, and depressive disorder.  (R. 27.)  The ALJ acknowledged that Plaintiff alleged additional impairments, but found that they were "not demonstrated by the objective medical evidence of record to impose more than a minimal limitation to the claimant's ability to perform basic work activities."  (R. 27-28.)  The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform medium work but should be limited to unskilled work with reduced concentration and attention demands in a low-stress environment.  (R. 29.)  Specifically, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms" were "not credible to the extent they were inconsistent with the [RFC]."  (R. 30.) Finally, the ALJ found that although Plaintiff was unable to perform any past relevant work, she was not disabled because she could work as a bench work assembler, hand packer, or laundry worker, all jobs that the ALJ found to exist in significant numbers in the national economy.  (R. 32-33.)

2

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 1, 2013 (R. 1-6); therefore, the ALJ's decision dated May 25, 2011 is the final decision of the Commissioner.  See Boniella v. Comm'r of Soc. Sec., 390 F. App'x 122, 123 (3d Cir. 2010); 20 C.F.R. § 416.1400(a).  In her request for appellate review, Plaintiff enclosed, among other medical records, an August 23, 2010 x-ray of her left knee showing moderate to severe arthritis and a February 9, 2012 x-ray showing that Plaintiff's left knee had deteriorated further since the August 23, 2010 x-ray.  (R. 5, 495, 533.)  Plaintiff filed the instant action on April 17, 2013.  The instant Request for Review asserts that the ALJ erred by:  (1) determining that she can perform medium, unskilled work with limitations only for reduced concentration and attention, (2) failing to address her testimony in the manner required by law, (3) determining that her mental health status allows a return to full-time competitive employment, (4) failing to pose a complete and proper hypothetical question to the VE, and (5) concluding that the jobs cited by the VE are appropriate for her and that they support a denial at step five of the sequential analysis.[2]

---

[2] To prove disability, "a claimant must demonstrate that there is some medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Stunkard v. Sec'y of Health and Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); and citing 42 U.S.C. § 423(d)(1)).  The Commissioner evaluates each case according to a five-step sequential evaluation process:

(i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our

Magistrate Judge Rueter recommended that the ALJ's determination of Plaintiff's RFC was not flawed with respect to Plaintiff's physical impairments because he:  (1) properly "found plaintiff's complaints of knee dysfunction were exaggerated because they were inconsistent with the evidence as a whole" (R&R at 9); (2) properly considered Plaintiff's complaints of medication-related fatigue when he "recounted plaintiff's testimony that she experienced significant side-effects from her HIV medication, including fatigue" but discounted Plaintiff's complaints in part "because plaintiff did not consistently report disabling side-effects to her treating physicians" (id. at 10); and (3) properly considered the effects of Plaintiff's obesity by giving "'particular consideration' to joint disorders"  (id. at 11).  The Magistrate Judge also determined that the ALJ's consideration of Plaintiff's mental limitations was not flawed because he properly assessed the treatment notes of Plaintiff's treating psychiatrist, as well as the opinion of Mr. Rosenfield, a consultative psychological examiner (id. at 12-17), and Dr. Ira Gensemer, a non-examining consultative psychologist (id. at 15-18).  The Magistrate Judge further found that "substantial evidence supports the ALJ's finding that there were a significant number of jobs in the national economy that Plaintiff can perform" since "at least one of the occupations identified

_____

listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 416.920(a)(4) (references to other regulations omitted).

4

by the VE exists in significant numbers and is not beyond [Plaintiff's] capabilities."  (Id. at 22 n.14.)  The Magistrate Judge also determined that the ALJ's hypothetical question to the VE was not deficient because the ALJ "was specific as to the limitations possessed by plaintiff in his hypothetical to the VE."  (Id. at 22.)  Finally, the Magistrate Judge found that Plaintiff's "new" evidence cannot serve as the basis for a remand to the Commissioner because the evidence is not new or material and there is no "good cause" for her failure to submit this evidence before the ALJ rendered his decision.  (Id. at 23-24.)

Plaintiff asserts three objections to the Report and Recommendation.  First, Plaintiff argues that the Magistrate Judge erred in finding that the ALJ properly considered all evidence relevant to Plaintiff's RFC, specifically, Mr. Rosenfield's consultative examination report, certain x-ray evidence, and Plaintiff's testimony regarding her symptoms.  Second, Plaintiff argues that the Magistrate Judge erred in finding that the ALJ's hypothetical question to the VE, which limited Plaintiff to unskilled work with reduced concentration demands in a low-stress environment, sufficiently accommodated her deficits in concentration, persistence, and pace. Third, Plaintiff argues that the Magistrate Judge erred by finding that the ALJ correctly found that she is not disabled at step five of the sequential evaluation process.

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited, and the ALJ's findings of fact will not be disturbed if they are supported by substantial evidence.  Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (citing 42 U.S.C. § 405(g)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . .").  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Brownawell, 554 F.3d at 355 (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003); and citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008)). The ALJ's legal conclusions are subject to plenary review. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999)).

This Court reviews de novo those portions of a Magistrate Judge's report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1). We may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. Id.

## III.   DISCUSSION

### A.   The ALJ's RFC Determination

Plaintiff argues that the Magistrate Judge erred in finding that there was substantial evidence to support the ALJ's RFC finding that she can perform medium work with some limitations. Specifically, Plaintiff argues that: (1) the ALJ did not consider the opinion of Mr. Rosenfield, Social Security's consultative examiner, that her ability to complete work tasks is poor; (2) x-rays submitted for the first time to the Appeals Council show that she has moderate to severe arthritis in her knee; and (3) the ALJ did not properly assess her testimony regarding the symptoms of her various medical conditions that she claims render her disabled.

#### 1.   Mr. Rosenfield's opinion evidence

Mr. Rosenfield conducted a clinical psychological disability evaluation of Plaintiff on October 23, 2009. (R. 396-402.) He determined that she was moderately depressed, tense, and nervous. (R. 400.) He diagnosed her as follows: AXIS I: "[c]ocaine [d]ependence (in remission);" "Major Depressive Disorder, recurrent, moderate[;]" and "Impulse-Control Disorder NOS" (R. 401); AXIS II: "Borderline Personality Disorder[;]" and AXIS III: "HIV Positive,

Hepatitis C, and HTN."   (Id.)   He further found that her prognosis is guarded.   (Id.)   He determined that Plaintiff's impairments affected her ability to "understand, remember, and carry out instructions."   (Id.)   He further determined that Plaintiff had "[s]light" ability to:   (1) "[u]nderstand and remember short, simple instructions," (2) "carry out short, simple instructions," and (3) "[m]ake judgments on simple work-related decisions."   (Id.)   He also determined that Plaintiff had "[m]oderate" ability to:   (1) "[u]nderstand and remember detailed instructions," (2) "[c]arry out detailed instructions,"   (3) "[i]nteract appropriately with the public," (4) "[i]nteract appropriately with supervisor(s)," (5) "[i]nteract appropriately with co-workers," (6) "[r]espond appropriately to work pressures in a usual work setting," and (7) "[r]espond appropriately to changes in a routine work setting."  (R. 396.)  Mr. Rosenfield further evaluated the effect of Plaintiff's impairments on her social functioning (finding that she socializes primarily with family and has been convicted of assault), and on her concentration, persistence, and pace.  With respect to the latter, Mr. Rosenfield wrote:

> In [sic] the question of has the claimant's mental condition affected her ability to maintain a daily household routine, and in that regard her routine appears to be more simplistic than average, but capable of being maintained for the most part.
>
> Her ability to sustain her attention long enough to complete tasks like reading a book, watching T.V. and preparing a meal would appear to be fair.
>
> Her ability to remember appointments independently would appear to be capable in view of her coming to today's evaluation on time.
>
> Her ability to complete assignments and/or to sustain work or work like related activities would appear to be poor.

(R. 402.)  The ALJ considered Mr. Rosenfield's opinion as follows:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Consultative psychologist Stephen Rosenfield reported that the claimant demonstrated an ability to maintain a daily household routine, sustain attention to complete simple tasks, and remember appointments independently

(Exhibit B5F).   He also opined, however, that the claimant's abilities to understand, remember, and carry out detailed instructions are moderately restricted by her impairments.

(R. 29.)

Plaintiff argues that the ALJ improperly relied on Mr. Rosenfield's statement that she could do simple tasks and ignored his assessment that her ability to complete work-like related activities was poor.  Plaintiff maintains that the ALJ is required to consider all of the medical evidence and explain why any of that evidence is not credited.  An ALJ's failure to consider all of the relevant medical evidence in his decision is grounds for remanding for such consideration. Fargnoli v. Massinari, 247 F.3d 34, 42 (3d Cir. 2001).  Consequently, an ALJ must explain why he credited some medical evidence but not other results and must "consider[] all of the evidence and give a reason for discounting the evidence he rejected."  Johnson v. Barnhart, 66 F. App'x 285, 288-89 (3d Cir. 2003) (citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994); Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119-20 (3d Cir. 2000)).

In this case, the ALJ specifically considered Mr. Rosenfield's opinion, which he referred to as the opinion of the consultative psychologist, in conjunction with the opinion of Dr. Gensemer, a state agency psychologist.   (R. 32.)   In weighing Mr. Rosenfield's and Dr. Gensemer's evaluations, the ALJ concluded that "on the basis of the opinions of the consultative psychologist and the State agency psychologist, the undersigned limits the claimant to unskilled work with reduced concentration and attention requirements in a low-stress environment to accommodate the symptoms of her mental impairment."  (Id.)  The ALJ further explained:

The consultative psychologist [also] found the claimant to be moderately limited in all categories of her ability to respond appropriately to supervision, co-workers, and work pressure in a work setting (Exhibit B5F).  Similarly, the State agency psychologist, in reviewing the evidence of record, found the claimant moderately limited in her ability to understand, remember, and carry out detailed instructions,

maintain attention and concentration for extended periods, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, her ability to respond appropriately to changes in the work setting, and her ability to complete a normal workday and workweek without interrelation from her psychological symptoms and perform at a consistent pace without unreasonable rest periods (Exhibit B7F).

(R. 31.)

The ALJ considered both Mr. Rosenfield's and Dr. Gensemer's psychological assessments of Plaintiff. Although he did not specifically mention Mr. Rosenfield's opinion that "[h]er ability to complete assignments and/or to sustain work or work like related activities would be appear to be poor" (id.), the ALJ did credit and rely on his evaluation. Moreover, Mr. Rosenfield's opinion regarding Plaintiff's ability to sustain work activities is not supported by the remainder of his evaluation. (See R. 356-402.) The ALJ may disregard unsupported medical opinions. See Rimel v. Astrue, 521 F. App'x 57, 59 (3d Cir. 2013) (stating that ALJ properly discredited a doctor's opinion that was not supported by that doctor's medical documentation). In light of the foregoing, we conclude that the ALJ credited Mr. Rosenfield's opinion to the extent that it was consistent with the other evidence in the record.

Indeed, as the ultimate decisionmaker regarding RFC decisions, the ALJ was not required to adopt any of Mr. Rosenfield's conclusions bearing on Plaintiff's RFC. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Instead, the ALJ was tasked with explicitly considering and evaluating all of the relevant evidence in the record, which he did, and we conclude that his review was consistent with his responsibilities under the regulations and case law. See Fargnoli, 247 F.3d at 42. Instead of adopting all of Mr. Rosenfield's conclusions when considering how Plaintiff's mental impairments affected her RFC, the ALJ considered Mr. Rosenfield's conclusions along with the rest of the evidence of record, including Mr.

Rosenfield's evaluation, Dr. Gensemer's report, the notes from Plaintiff's treatment at Lehigh

Valley Community Mental Health Center, Inc. (R. 45, 368, 373, 384), and Plaintiff's own

accounts of her symptoms of anxiety and depression (R. 30-31, 379-84).  Based on his review of

all of this material, the ALJ chose to incorporate portions of Mr. Rosenfield's findings, but not

all of them, into his RFC assessment.  (R. 31-32.)  Clearly, this is not a case in which significant

probative evidence may have been ignored.  See Fargnoli, 247 F.3d at 42.  Accordingly, we

conclude that the ALJ did not, as Plaintiff suggests, improperly overlook the portion of Mr.

Rosenfield's report stating that Plaintiff's ability to complete assignments or sustain work or

work-related activities was "poor."  (R. 492.)  We therefore overrule Plaintiff's objection that the

Magistrate Judge erred in finding that there was substantial evidence to support the ALJ's RFC

finding in light of Mr. Rosenfield's opinion.

2.    Plaintiff's knee x-rays

Plaintiff argues that the Magistrate Judge erred in finding that there was substantial

evidence to support the ALJ's RFC finding because x-rays submitted for the first time to the

Appeals Council show that she has moderate to severe arthritis in her left knee.  She argues that

the Magistrate Judge erred by relying on the testimony of Dr. Sklaroff, the ME, who only

discussed Plaintiff's normal knee x-ray from September 13, 2007 (R. 58-59, 351), without

considering an x-ray of Plaintiff's knee dated August 23, 2010, which showed moderate to

severe arthritis (R. 533).  Plaintiff's counsel submitted the August 23, 2010 x-ray to the Appeals

Council on May 24, 2012, a year after the ALJ issued his unfavorable decision.[3]  (R. 483.)

Evidence that was not part of the record before the ALJ "'cannot be used to argue that the ALJ's

---

[3] On May 24, 2012, Plaintiff also submitted a February 9, 2012 x-ray to the Appeals Council.  This x-ray, however, is not at issue here.

decision was not supported by substantial evidence.'" Matthews v. Apfel, 239 F.3d 589, 594-95

(3d Cir. 2001) (quoting Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991)).   Since the

Magistrate Judge could not consider this x-ray in determining whether there was substantial

evidence in the record to support the ALJ's RFC finding, we overrule Plaintiff's objection that

the Magistrate Judge's substantial evidence analysis was fatally flawed because it did not

consider the x-ray.[4]

---

[4] To the extent that Plaintiff's arguments can be interpreted as seeking a remand to the
Commissioner for consideration of the August 23, 2010 x-ray, we conclude that a remand is not
necessary.  See 42 U.S.C. § 405(g).  The Third Circuit has instructed that a plaintiff who seeks a
remand on the basis of evidence that was not part of the record before the ALJ must satisfy three
factors:  (1) the evidence is new; (2) material; and (3) she had good cause for failing to present
that evidence to the ALJ.  Matthews, 239 F.3d at 594-95.
    Even assuming that the August 23, 2010 x-ray is new and material, we find that the
record before us does not contain any evidence to support a finding that Plaintiff had good cause
for failing to submit this x-ray to the ALJ.  Plaintiff's current counsel asserts that Plaintiff and
her non-attorney representative were at fault for failing to submit the x-ray to the ALJ:

> [W]hile it [is] unfortunate that Ms. Norris' file did not contain [the August 23,
> 2010 x-ray] at the hearing time, she was unaware that was the case.  Undersigned
> counsel had not represented her at her hearing, but reviewed the file post-decision
> to ascertain what evidence was missing . . . Ms. Norris is not a sophisticated or
> highly educated woman, and she was served in her hearing by a non-attorney
> representative.  Apparently, this important x-ray was not included in records . . . .

(Pl.'s Objs. to R&R at 2.)
    As a general matter, a bare assertion of error is insufficient to establish good cause for
failing to include evidence in the record before the ALJ.  See Shuter v. Astrue, 537 F. Supp. 2d
752, 759-60 (E.D. Pa. 2008) (stating that misunderstanding with counsel was not good cause for
plaintiff's failure to submit medical records to the ALJ because there was no information
"explaining the circumstances surrounding the alleged misunderstanding, the timing of this
alleged misunderstanding, or in what way the plaintiff's expectations were not met by his
attorney" (internal quotation omitted)).   Here, Plaintiff has provided us with no specific
information as to why she did not submit the August 23, 2010 x-ray to the ALJ when she
submitted voluminous other medical records.  Furthermore, the mere fact that Plaintiff was
unrepresented until the Request for Review stage does not suffice to establish good cause.
Indeed, several cases indicate that there must be some other factor present to establish good
cause.  See, e.g., Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 832, 834 (3d Cir.
1984) (finding that good cause existed when plaintiff was unrepresented until after the ALJ had
rendered his decision and all of the medical reports under consideration were compiled after
counsel entered the case); Saldana v. Weinberger, 421 F. Supp. 1127, 1131-32 (E.D. Pa. 1976)

3.      The ALJ's credibility finding regarding Plaintiff's subjective complaints

Plaintiff argues that the Magistrate Judge erred in finding that there was substantial evidence to support the ALJ's RFC finding because the ALJ did not properly assess her testimony regarding the symptoms of her various medical conditions that she claims render her disabled.

The Social Security Act establishes that:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged. . . .

42 U.S.C. § 423(d)(5)(A).  Social Security regulations further provide that a strong indication of the credibility of a claimant's statements is their consistency, internally, and with other

---

(finding that remand was required when plaintiff was unrepresented at his administrative hearing and "[i]t was patently evident prior to the close of the hearing that [plaintiff] did not understand the significance of the period of disability coverage" because no evidence was submitted from the time period during which plaintiff was supposedly disabled); Erwin v. Sec'y of Health, Educ. & Welfare, 312 F. Supp. 179, 184-85 (D.N.J. 1970) (finding that remand was required when plaintiff was unrepresented during her administrative proceedings, noting that plaintiff "did not seem to be able to fully cooperate, particularly with respect to recollection of dates and periods of disabling pain[;]" "[m]edical records [did] not detail the dates and number of visits for treatment[;]" and "[t]here [were] substantial periods of time where the record [was] silent as to the existence of disabling pain and distress . . . .").  Here, none of these additional factors exist. Plaintiff submitted other medical records pertaining to the time period during which she was supposedly disabled; the x-ray was taken well before the conclusion of her administrative proceedings; and she did not appear to have difficulty remembering critical details concerning her medical conditions at her administrative hearing.  Moreover, although Plaintiff did not have legal counsel representing her during her administrative proceedings, she did have a non-attorney representative to assist her.  We conclude, accordingly, that Plaintiff has not established good cause for her failure to submit the August 23, 2010 x-ray to the ALJ and that Plaintiff has not satisfied all three factors necessary for a remand to the Commissioner.

information in the record.[5]   SSR 96-7p, 1996 WL 374186, at *5-6 (July 2, 1996).   Indeed, a

claimant's testimony regarding subjective complaints is entitled to great weight when supported

by competent medical evidence.   See Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992)

("[S]ubjective complaints must be substantiated by medical evidence." (citing 42 U.S.C. §

423(d)(3))); see also Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002) (stating that subjective

complaints must be given "serious consideration" (citation omitted)); Dobrowolsky v. Califano,

606 F.2d 403, 409 (3d Cir. 1979).

### a.   Plaintiff's complaints about her knee pain

As discussed above, Plaintiff testified at the administrative hearing that (1) when she

walks on her left knee, it "swells very badly," (2) her knee "swells all the time," (3) she "always"

has to sit down, (4) because her knees "hurt[] so bad sometime[s,]" she has to wait until the last

minute to go to the bathroom, and (5) she cannot walk three or four blocks without her knees

"killing" her.   (R. 44, 46-47, 55.)   Plaintiff maintains that her subjective complaints are

consistent with the medical evidence in the record, specifically:  (1) a May 10, 2007 clinic report

stating that she assessed her left knee pain as a seven on a scale of one to ten and that there was

tenderness in the inferior patella area (R. 243-44); (2) an August 30, 2007 clinic report stating

that she assessed her left knee pain as a seven on a scale of one to ten (R. 237); (3) a record of

her September 5, 2007 clinic visit during which she assessed her left knee pain as a nine on a

scale of one to ten and which noted that she would be referred for a knee x-ray (R. 236); (4) a

November 29, 2007 clinic report stating that she assessed her left knee pain as a seven on a scale

---

[5]   The Social Security Commission's substantive regulations have the force of law
because they have been "authorized by Congress and promulgated by [that] agency to implement
a statute."   United States v. Walter Dunlap & Sons, Inc., 800 F.2d 1232, 1238 (3d Cir. 1986)
(citing Chrysler Corp. v. Brown, 441 U.S. 281, 302 n.31 (1979)).

of one to ten (R. 234-35); (5) an April 3, 2008 clinic report stating that she assessed her bilateral knee pain as an eight on a scale of one to ten (R. 231); (6) a May 21, 2009 clinic report stating that she assessed her left knee pain as a six on a scale of one to ten (R. 219); (7) a December 3, 2009 clinic report stating that she assessed her left knee pain as chronic and as a seven on a scale of one to ten (R. 425); and (8) a January 18, 2011 clinic report stating that she was experiencing significant left knee pain, had worsening knee arthritis, and showed signs of knee swelling (R. 555).  These notes also state that an "x-ray done recently [at the] Hospital showed worsening arthritis."  (Id.)  Accordingly, she contends that there is no inconsistency between her complaints and the medical evidence.

The ALJ based his determination that Plaintiff's complaints about her knee pain were not entirely credible on the results of x-rays of her left knee dated September 13, 2007, which were the only medical images of record and indicated "normal findings without evidence of pathology." (R. 28, 351.)  Indeed, Dr. Sklaroff testified that Plaintiff's x-ray was negative.[6]  (R. 58.)  The ALJ also relied on a report by Dr. Mark Bohn, the state agency physician who evaluated Plaintiff's physical complaints.  (R. 31-32.)  According to the ALJ, Dr. Bohn concluded that Plaintiff was "generally capable of work activity performed at a medium exertional level." (R. 31.)  Dr. Bohn determined that Plaintiff could occasionally lift and carry fifty pounds, frequently lift and carry twenty-five pounds, stand and/or walk for six hours, and had no limitations on pushing and pulling.  (R. 390.)  Moreover, although Dr. Bohn did not

_____

[6] Plaintiff also relies on the August 23, 2010 and February 9, 2012 x-rays that she submitted to the Appeals Council as supporting her testimony that she cannot do medium work. As we discussed above, these x-rays were submitted to the Appeals Council but were not before the ALJ when he rendered his decision; thus, they cannot serve as a basis for showing that the ALJ's determination was not supported by substantial evidence.  See Matthews, 239 F.3d at 594-95.

14

specifically mention any knee impairment, he did relate that Plaintiff had few physical limitations.  (R. 394.)  Specifically, he noted that Plaintiff had the "ability to care for herself and maintain her home," did not attend physical therapy, and did not require an assistive device to ambulate.  (Id.)  Dr. Bohn further noted that Social Security employees did not observe Plaintiff exhibiting any physical difficulties while she was at the field office and that her treatment was "routine and conservative in nature."  (Id.)  The ALJ found Dr. Bohn's findings to be "generally consistent" with those of Dr. Sklaroff and gave "great weight" to Dr. Bohn's findings.  (R. 32.) The ALJ also noted that although Plaintiff testified that her knees were "constantly swollen," her treating physicians "consistently" described her knees as demonstrating no swelling or edema. (R. 31, 420, 423, 426, 437.)  The ALJ further relied on other evidence in the administrative record as supporting his conclusions with respect to her credibility.  He noted that there was "no evidence that the claimant [was] unable to ambulate effectively" (R. 28), and further noted that her complaints of left knee pain were addressed with conservative treatment such as medication, application of ice, and instructions to lose weight (R. 31, 419-38).

Based on this evidence, we conclude that there is substantial evidence to support the ALJ's finding that Plaintiff's subjective complaints of knee pain were not credible and that the RFC limiting Plaintiff to medium work adequately accounted for any related functional limitations.  While Plaintiff has established that her testimony at the administrative hearing was consistent with her prior complaints to her physicians about knee pain, her subjective complaints do not undermine the substantial objective medical evidence supporting the ALJ's conclusion. See Harkins v. Comm'r of Soc. Sec., 399 F. App'x 731, 735 (3d Cir. 2010) (stating that "an ALJ may . . . reject a claim of disabling pain where he 'consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the

record'" (quoting <u>Matullo v. Bowen</u>, 926 F.2d 240, 245 (3d Cir. 1990))).  We therefore overrule Plaintiff's objection that the Magistrate Judge erred in finding that the ALJ properly credited Plaintiff's subjective complaints of knee pain.

> b.     <u>Plaintiff's complaints about her obesity</u>

Plaintiff, who weighs 288 pounds, argues that the Magistrate Judge erred in failing to find that the ALJ improperly discounted her credibility with respect to her subjective complaints of pain because the ALJ did not adequately consider the limiting effects of Plaintiff's obesity on her ability to perform medium work.  Plaintiff argues that, while the Report and Recommendation "indicates that obesity was considered," the mere mention of that condition is not evidence that the ALJ considered the impact of that condition on her RFC.

In fact, the ALJ did more than merely mention Plaintiff's obesity.  The ALJ "consider[ed] the cumulative and additional effects of [Plaintiff's] obesity and hypertension," but nonetheless concluded that her impairments do not meet or medically equal any of the listed impairments. (R. 28.)  The ALJ noted that the 2007 x-ray of her knee showed no pathology, and Plaintiff had no difficulty with ambulation, as evidenced in part by the fact that Plaintiff "lives alone and cares for herself, including preparing meals, performing housework, and going shopping."  (R. 28, 351.)  We conclude that these findings of fact are supported by substantial evidence in the record.  (<u>See</u> R. 167-82.)  Moreover, Plaintiff has not established grounds for remanding this case to the Commissioner for more specific consideration of her obesity since she has not specified how her obesity would affect the ALJ's five-step analysis.  <u>See</u> <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 553 (3d Cir. 2005) (finding that no remand was necessary when plaintiff had not specified how a specific consideration of obesity would affect the five step analysis "beyond an assertion that her weight makes it more difficult for her to stand [and] walk").  Indeed, Plaintiff's

generalized assertion that her obesity should have been more thoroughly considered is not sufficient to justify a remand, particularly when the administrative record clearly indicates that the ALJ relied on ample medical evidence as a basis for his findings regarding her limitations and impairments.  See id.  We conclude, accordingly, that the ALJ adequately considered the effect of Plaintiff's obesity on her RFC.  We therefore overrule Plaintiff's objection that the Magistrate Judge erred in determining that the ALJ had given sufficient consideration to Plaintiff's complaints about the effect of her obesity on her RFC.  We thus conclude that there is substantial evidence to support the ALJ's RFC finding.

      B.      The ALJ's Hypothetical Question to the VE

Plaintiff argues that the ALJ found that she had moderate deficiencies of concentration, persistence, and pace, but failed to include these limitations in the hypothetical question he posed to the VE.[7]  The "hypothetical question posed to a vocational expert 'must reflect all of a claimant's impairments.'"  Burns, 312 F.3d at 123 (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)).  Furthermore, a VE's testimony with regard to "a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question [posed to the VE] accurately portrays the claimant's individual physical and mental impairments."  Burns, 312 F.3d at 123 (quoting Podedworny v. Harris, 745 F.2d 120, 218 (3d Cir. 1984)); see also Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005).

---

[7] Plaintiff also appears to argue that the ALJ's hypothetical question to the ALJ was deficient because the RFC on which it was based failed to include her specific moderate deficiencies in concentration, persistence, and pace.  However, the requirement that the hypothetical question include all impairments "encompass[es] only those that are medically established," which "in turn means that the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations."  Rutherford, 399 F.3d at 554 (emphasis in original).  As discussed in Section III.A, the ALJ's determination of Plaintiff's RFC was supported by substantial evidence in the record.

Here, the ALJ's hypothetical asked the VE to "[l]ook at unskilled work, lowered concentration, attention and stress spectrum" and to provide "some examples of jobs" that Plaintiff could perform.   (R. 62.)   This question thus did not use the phrase "moderate deficiencies in concentration, persistence, and pace," which Plaintiff apparently believes should have been included.   However, irrespective of the ALJ's precise phrasing of his hypothetical question, the record is clear that the VE specifically considered Plaintiff's moderate limitations in concentration, persistence, and pace when he answered the ALJ's hypothetical question.   (See R. 63.)   Indeed, the VE stated that he was ruling out prospective jobs given that Plaintiff's "[d]ifficulties in maintaining concentration, persistence or pace [were] moderate."   (Id.)   As such, the VE only recommended jobs that took those limitations into account, and the ALJ was entitled to rely on the VE's opinion that Plaintiff would be capable of performing these jobs despite her limitations in concentration, persistence, and pace.   See Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999) (stating that VE's testimony in response to "hypothetical that fairly set forth every credible limitation established" by the record constituted substantial evidence of non-disability and could be relied upon by the ALJ); Elnicki v. Barnhart, Civ. A. No. 04-2653, 2005 WL 1715675, at *5 (E.D. Pa. July 21, 2005) (finding that hypothetical question with limitation of unskilled work accurately reflected moderate limitation in concentration).   Accordingly, we conclude that the ALJ's hypothetical properly incorporated Plaintiff's moderate deficiencies of concentration, persistence, and pace, and overrule Plaintiff's objection to the Magistrate Judge's finding that the ALJ appropriately included her moderate deficiencies in his hypothetical question to the VE.

C.      The ALJ's Finding at Step Five that there are a Significant Number of Jobs in the National Economy that Plaintiff can Perform

Plaintiff argues that the Magistrate Judge erred in determining that the record contains substantial evidence to support the ALJ's finding at step five that she is not disabled. Specifically, she argues that the Magistrate Judge erred in affirming the ALJ's finding that she would be capable of performing the jobs of hand packer and laundry worker.  Plaintiff argues that she cannot perform the jobs of hand packer or laundry worker because of her knee arthritis, obesity, HIV, depression, and difficulty with impulse control, since she is unable to "stand on her feet for almost an entire work day, carry loads of laundry or tools or products that weigh 25 pounds for 2/3 of every hour, and for the other 1/3 carry 50 pounds . . . ." (Pl.'s Objs. to R&R at 5-6).   She further argues that these two jobs are not "low stress," which she contends is significant since she "has difficulty coping and in responding appropriately to stresses."  (Id. at 6.)  In support of her argument, Plaintiff relies on her testimony and other evidence regarding her subjective complaints.

As we discussed above, an individual's subjective complaints are not conclusive evidence of disability, and the ALJ must also consider whether medical evidence supports these complaints.   42 U.S.C. § 423(d)(5)(A); see also Williams, 970 F.2d at 1186 ("[S]ubjective complaints must be substantiated by medical evidence." (citing 42 U.S.C. § 423(d)(3))).  In order to deny a claim of disability at step five, the Commissioner has the burden of demonstrating that the claimant is capable of performing other available work.  Plummer, 186 F.3d at 428 (citing 20 C.F.R. § 404.1520(f)).

1.      Plaintiff's knee arthritis and obesity

Plaintiff argues that she cannot perform the jobs of hand packer or laundry worker

because of her knee arthritis and obesity. However, as we discussed above, the ALJ found that Plaintiff's subjective complaints regarding her knee arthritis and obesity were not entirely credible, and that finding is supported by substantial evidence. Moreover, we have already determined that the ALJ's RFC assessment, which was the basis for his hypothetical question to the VE, is supported by substantial evidence. Accordingly, we also conclude that the ALJ was entitled to rely on the VE's testimony at step five notwithstanding Plaintiff's subjective complaints regarding her knee pain and obesity. We therefore overrule Plaintiff's objection insofar as it asserts that the ALJ failed to give adequate consideration to her knee arthritis and obesity.

### 2.      Plaintiff's HIV

Plaintiff argues that she cannot perform the jobs of hand packer or laundry worker because of her HIV, which causes her to feel fatigued. At the administrative hearing, Plaintiff testified that she experiences significant side effects from her HIV medication, including fatigue, insomnia, deafness, and difficulty maintaining focus. (R. 43-44, 46, 48, 57.) The ALJ found that Plaintiff's subjective complaints regarding the side effects of her HIV medication had been inconsistent. (R. 31.) For example, contrary to Plaintiff's testimony that the medication caused fatigue, Plaintiff informed her treating physician that she did not take her medication when she had something important to do the next morning because her medication kept her awake at night, and she reported to her medical providers at other times that she had "no complaints" about her medication. (R. 31, 221, 224.) An ALJ may decline to account for purported side effects from medication in an RFC assessment where the medical record contains no significant complaints of these side effects. See Burns, 312 F.3d at 130-31. We conclude, accordingly, that there is substantial evidence to support the ALJ's finding that Plaintiff's subjective complaints regarding

her HIV medication were not credible and, thus, that they did not need to be included in the hypothetical posed to the VE.  We therefore overrule Plaintiff's objection insofar as it asserts that the ALJ failed to give adequate consideration to her HIV at step five.

           3.      <u>Plaintiff's depression and difficulty with impulse control</u>

Plaintiff argues that she cannot perform the jobs of hand packer or laundry worker because of her depression and difficulty with impulse control.  Specifically, she argues that these two jobs are not "low stress," which she contends is significant since she "has difficulty coping and in responding appropriately to stresses."  (Pl.'s Objs. to R&R at 6.)  The ALJ found that Plaintiff was affected by depressive disorder (R. 27), but did not credit all of her testimony regarding her depression (R. 31).  Plaintiff maintains that her complaints about her depression and difficulty with impulse control were credible and should have been incorporated into her RFC.  She further contends that her difficulty with impulse control should have been acknowledged with a limitation on interactions with co-workers and supervisors.

The ALJ found that Plaintiff's medical records did not support her testimony about her mental health for the following reasons.  First, Plaintiff's medical records show that she received psychiatric care from Dr. Carlos Velas at Lehigh Community Mental Health Center, Inc.  (R. 31, 358-88.)  Plaintiff claimed during her March 21, 2011 hearing that she was still receiving psychiatric care from Dr. Velas; however, her medical records only showed that she had been treated by Dr. Velas through part of 2009.  (R. 31, 45, 358-88.)  In addition, the ALJ stated that Dr. Velas's most recent notes indicated that despite displaying anxious mood and depressed affect, Plaintiff was appropriately dressed and groomed, fully oriented to all spheres, presented normal speech, had a coherent thought process, and exhibited good insight and judgment.  (R. 31, 384.)  The ALJ also relied on two earlier evaluations by Dr. Velas that showed Global

Assessment of Functioning ("GAF") scores of fifty-six and sixty-five, respectively.[8]  (R. 31, 368, 373.)  Moreover, the ALJ's decision not to accept all of Plaintiff's testimony concerning her depression and difficulty with impulse control is also supported by other evidence in the record, including Mr. Rosenfield's evaluation of Plaintiff.  While Mr. Rosenfield diagnosed Plaintiff as having "Major Depressive Disorder, recurrent, moderate" and "Impulse-Control Disorder NOS," he found that Plaintiff had "[m]oderate" ability to:  (1) "[u]nderstand and remember detailed instructions," (2) "[c]arry out detailed instructions," (3) "[i]nteract appropriately with the public," (4) "[i]nteract appropriately with supervisor(s)," (5) "[i]nteract appropriately with co-workers," (6) "[r]espond appropriately to work pressures in a usual work setting," and (7)

---

[8] A GAF score within the range of fifty-one to sixty indicates "moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational[,] or school functioning (e.g., few friends, conflicts with peers or co-workers)." Roberson v. Colvin, Civ. A. No. 13-1183, 2014 WL 4258306, at *3 n.3 (W.D. Pa. Aug. 26, 2014) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000)).  A GAF score within the range of sixty-one to seventy indicates "'[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaning interpersonal relationships.'"  Dunkle v. Comm'r of Soc. Sec., 829 F. Supp. 2d 307, 311 n.11 (W.D. Pa. 2011) (emphasis omitted) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000), at 34).

   We note that it is not altogether clear whether the ALJ could have relied only on Plaintiff's GAF scores in forming his conclusion were the decision made today.  See Lee v. Colvin, Civ. A. No. 11-4641, 2014 WL 2586935, at *6 n.3 (E.D. Pa. June 10, 2014).  Indeed, subsequent to the ALJ's decision in this case, the Social Security Administration issued the following Administrative Message:

> [A] GAF needs supporting evidence to be given much weight.  By itself, the GAF cannot be used to "raise" or "lower" someone's level of function.  The GAF is only a snapshot opinion about the level of functioning.  It is one opinion that we consider with all the evidence about a person's functioning.  Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal pictures of the claimant's mental functioning for a disability analysis.

Admin. Message 13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (Soc. Sec. Admin. July 22, 2013) (cited in Lee, 2014 WL 2586935, at *6 n.3).  However, as discussed above, the ALJ did not rely solely on Plaintiff's GAF score in determining Plaintiff's RFC.

"[r]espond appropriately to changes in a routine work setting." (R. 396, 401.) We conclude, accordingly, that there is substantial evidence to support the ALJ's determination that Plaintiff's subjective complaints about her depression and difficulty with impulse control were not entirely credible and that they did not need to be more heavily incorporated into the ALJ's determination of Plaintiff's RFC.

Based on this record, the ALJ asked the VE to "[l]ook at unskilled work, lowered concentration, attention and stress spectrum" and to provide him with some types of jobs Plaintiff could perform. (R. 62.) The VE responded that Plaintiff could perform the jobs of hand packer and laundry worker. (Id.) The ALJ was entitled to rely on the VE's testimony (id.) that these occupations are performed in a low-stress environment. See 20 C.F.R. § 416.966(e) (explaining that the ALJ is permitted to consult a VE to help determine whether a claimant can perform a significant number of jobs in the national economy). In light of the foregoing, we conclude that there is substantial evidence to support the ALJ's finding that Plaintiff is not disabled and that Plaintiff can perform the jobs of hand packer and laundry worker. We therefore overrule Plaintiff's objection as to her argument that the ALJ failed to give adequate consideration to her depression and difficulty with impulse control. We conclude, accordingly, that there is substantial evidence to support the ALJ's finding at step five that Plaintiff is not disabled.

**III.    CONCLUSION**

For the reasons stated above, we overrule each of Plaintiff's objections to the Magistrate Judge's Report and Recommendation.

BY THE COURT:


/s/ John R. Padova_____
John R. Padova, J.

24